UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
 DEREK TRIVELLI,

        Plaintiff,

v.

 PUTNAM HOSPITAL CENTER, HEALTH
 QUEST SYSTEMS, INC. and NUVANCE
 HEALTH,

        Defendants.
---------------------------------------------------------X

**MEMORANDUM OPINION**
<u>**AND ORDER**</u>

19-CV-09898 (PMH)

PHILIP M. HALPERN, United States District Judge:

 Plaintiff Derek Trivelli ("Plaintiff") brings this action against Defendants Putnam Hospital Center ("PHC"), Health Quest Systems, Inc. ("HQSI"), and Nuvance Health ("NH" and collectively "Defendants") alleging that he was wrongfully terminated in violation of the Energy Reorganization Act ("ERA"), 42 U.S.C. § 5801, *et seq*. and New York Labor Law ("NYLL") § 741. (Doc. 9, "Compl.").

 By motion dated March 6, 2020, Defendants moved to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 29; Doc. 31, "Defs. Br."). On April 24, 2020, Plaintiff filed his brief in opposition to Defendants' motion (Doc. 34, "Pl. Br."), and, on May 15, 2020, Defendants filed their reply brief (Doc. 36, "Reply").

 For the reasons set forth below, Defendants' motion is GRANTED IN PART.

<u>**BACKGROUND**</u>

 The facts, as recited below, are taken from Plaintiff's Complaint. Plaintiff was hired as a Nuclear Medical Technologist by Northern Dutchess Hospital on July 7, 2007. (Compl. ¶ 37). On

or about November 9, 2014, Plaintiff was promoted to Radiology Supervisor at PHC.[1] (*Id*. ¶ 40). Defendant worked at PHC until his termination on November 20, 2017. (*Id*.). Plaintiff's job responsibilities as a Radiology Supervisor included supervising outpatient radiology, dealing with patient complaints related to outpatient radiology, and administering nuclear isotopes into patients. (*Id*. ¶¶ 42-43). Plaintiff's job responsibilities as Radiology Supervisor did not include performing fluoroscopies[2] or any other type of x-ray procedure. (*Id*. ¶¶ 44-45).

On September 26, 2017, April Lividini ("Lividini"), the Radiology Manager at PHC, directed Plaintiff to perform fluoroscopies on all of PHC's radiation protection lead units.[3] (*Id*. ¶ 49). Plaintiff alleges that prior to September 26, 2017, Plaintiff "had never used a fluoroscopy machine, was never trained on conducting fluoroscopies, was never provided training on appropriate protective gear and was never provided training on the appropriate radiation badges.[4]" (*Id*. ¶ 47).

Plaintiff performed fluoroscopies on more than 100 radiation protection lead units on October 4-5, 2017. (*Id*. ¶ 51). Plaintiff claims that neither he nor the Patient Care Technicians who assisted him in performing the fluoroscopies were sufficiently trained in how to use a fluoroscopy machine. (*Id*. ¶¶ 53-54). Plaintiff avers that the fluoroscopies revealed that "a lot" of the radiation

---

[1] Plaintiff's Complaint does not explain or refer to the period of time between July 7, 2007 and November 9, 2014; and does not explain how, if at all, Northern Dutchess Hospital relates to PHC.

[2] Plaintiff's Complaint explains that "Fluoroscopy is a type of medical imaging that shows a continuous X-ray image on a monitor, similar to an X-ray 'movie.' A continuous X-ray beam is passed through the body part being examined. The beam is transmitted to a TV-like monitor so that the body part and its motion can be seen in detail. Fluoroscopy can also be used to determine the integrity of radiation protection lead units because it reveals any holes or tears in the lead." (*Id*. ¶¶ 21-22).

[3] Plaintiff's Complaint explains that "Radiation protection lead units shield patients and personnel from unnecessary X-ray radiation exposure from diagnostic radiology procedures. Radiation protection lead units are protective garments and include lead aprons, skirts, and thyroid shields. (*Id*. ¶¶ 18-19).

[4] Plaintiff's Complaint explains that "Radiation badges or radiation dosimeters measure a person's occupational radiation dose." (*Id*. ¶ 27).

protection lead units "had holes, cracks, or tears in them" which posed health and safety risks to anyone who wore them. (*Id.* ¶¶ 55-56). Plaintiff alleges further that while the safety records for the radiation protection lead units showed that fluoroscopies had been performed on the units six months earlier and that the units had no issues, Plaintiff knew this information was inaccurate because fluoroscopies had not been performed on the units in the last six months. (*Id.* ¶¶ 57-58).

After performing the fluoroscopies, on multiple occasions, Plaintiff reported his safety concerns related to the fluoroscopy procedure. On October 20, 2017, Plaintiff spoke to Anthony Iraola ("Iraola"), a Human Resources Partner at PHC, who encouraged Plaintiff to communicate his concerns to Lividini by e-mail. (*Id.* ¶¶ 60-61). On October 23, 2017, Plaintiff e-mailed Lividini expressing his concerns with the fluoroscopy procedure. (*Id.* ¶ 62). Later that same day, Lividini issued a "written caution/verbal warning" to Plaintiff for being unprepared for a meeting that had taken place on October 17, 2017. (*Id.* ¶ 68). Plaintiff claims that this was the first time he received any disciplinary warning as an employee. (*Id.* ¶ 69). Also, on October 23, 2017, Plaintiff e-mailed Kathryn Duras ("Duras"), Human Resources Director at PHC, to discuss the fluoroscopy procedure. (*Id.* ¶ 71). Duras recommended that Plaintiff meet with Iraola. (*Id.* ¶ 72). On October 24, 2017, Plaintiff e-mailed Iraola to again raise concerns about the fluoroscopies and reported that he believed he did not have the proper licenses or training to conduct the fluoroscopies. (*Id.* ¶ 73). Plaintiff also told Iraola that he believed that Lividini retaliated against him by issuing a disciplinary warning after he e-mailed her on October 23, 2017. (*Id.* ¶ 75).

On October 24, 2017, Lividini e-mailed Plaintiff and instructed him to finish all of the fluoroscopies despite his safety concerns. (*Id.* ¶ 70). That same day, Iraola and Duras met with Plaintiff. (*Id.* ¶¶ 76-77). Plaintiff stated that he did not have the proper training to conduct fluoroscopies, was not provided appropriate safety gear, believed he had been exposed to radiation,

and believed that the radiation protection units had not been inspected properly for years. (*Id*. ¶¶ 77-79). During this meeting, Plaintiff disclosed that Lividini maintained the records related to the inspections of the radiation protection lead units and that Plaintiff believed the records indicated falsely that lead units passed inspection when that was not true. (*Id*. ¶¶ 80-82). Plaintiff stated his belief that Lividini falsified official records in the event that New York State audited or inspected PHC. (*Id*. ¶ 83).

On October 9, 2017, after performing the fluoroscopies, Plaintiff first went to see his primary care physician after an unusual rash developed on his neck and upper back. (*Id*. ¶ 59). On October 26, 2017, Plaintiff again saw his physician because his rash had worsened, he was fatigued, and he had lost weight. (*Id*. ¶ 84). Plaintiff was advised by his physician to take a leave from work and to ask PHC for information regarding possible radiation exposure. (*Id*. ¶¶ 85-86). That same day, Plaintiff requested that Iraola and Duras provide Plaintiff information regarding how much radiation he was exposed to, the risks of radiation exposure, and Defendants' whistleblower policies. (*Id*. ¶¶ 88-89). Plaintiff claims that Defendants never responded. (*Id*. ¶¶ 90-92). Plaintiff saw his physician for a third time on November 3, 2017 at which time he was diagnosed with probable radiation exposure. (*Id*. ¶¶ 93-94).

On November 9, 2017, Plaintiff was informed that PHC would not provide Plaintiff any information related to his October 26, 2017 inquiry. (*Id*. ¶ 99). On November 20, 2017, Plaintiff was notified that he was being terminated. (*Id*. ¶ 102). Plaintiff was provided a written explanation for why he was being terminated, which stated:

> On October 24, 2017, Derek Trivelli made a complaint to H[uman]R[esources], accusing April Lividini of requiring him to perform fluoroscopy tests on lead protective gear, which Derek stated was against his scope of practice. After a full investigation, it has been determined that Derek's complaints were not substantiated. Additionally, he falsified statements with regards to not being equipped to perform the task and not being properly trained in Radiation Safety.

> Derek violated H[ealth]Q[uest] Policy Rules of Conduct, Section B: Violations Resulting in Suspension and/or Immediate Discharge (Major Violations). Derek failed to be truthful regarding the investigation of his complaints. Derek continued to be disruptive and interfere with the investigation after being told multiple times he needed to stop continually calling HR and other Health Quest personnel making demands related to the investigation.

(*Id.* ¶ 104). Plaintiff claims that prior to his termination he had been an "exemplary employee." (*Id.* ¶¶ 105-09).

On December 5, 2017, Plaintiff filed a complaint with the United States Department of Labor ("DOL") asserting that his termination was retaliatory. (*Id.* ¶ 11). The DOL Occupational Safety and Health Administration ("DOL-OSHA") *sua sponte* amended Plaintiff's complaint on July 18, 2019 and added a claim of retaliatory employment practices in violation of the ERA. (*Id.* ¶ 13). On October 1, 2019, Plaintiff notified OSHA that he intended to file an action in this Court pursuant to 29 C.F.R. § 24.114 and served notice on HQSI. (*Id.* ¶¶ 15-16). This action followed.

## STANDARD OF REVIEW

### I.  Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction, and Rule 12(b)(1) requires dismissal of an action 'when the district court lacks the statutory or constitutional power to adjudicate it.'" *Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "The party invoking the Court's jurisdiction bears the burden of establishing jurisdiction exists." *Hettler v. Entergy Enters., Inc.*, 15 F. Supp. 3d 447, 450 (S.D.N.Y. 2014) (citing *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009)). When deciding a motion to dismiss under Rule 12(b)(1) at the pleadings stage, the Court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." *Id.* (quoting *Conyers*, 558 F.3d at 143); *see also Doe v. Trump Corp.*, 385 F. Supp. 3d 265, 274 (S.D.N.Y. 2019).

When "the defendant moves for dismissal under Rule 12(b)(1) . . . as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Saint-Amour v. Richmond Org., Inc*., 388 F. Supp. 3d 277, 286 (S.D.N.Y. 2019) (quoting *United States v. New York City Dep't of Hous., Pres. & Dev.*, No. 09-CV-6547, 2012 WL 4017338, at *3 (S.D.N.Y. Sept. 10, 2012)).

## II.     Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion enables a court to consider dismissing a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly,* 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id*. The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations [in the complaint], a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, a court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). However, the presumption of truth does not extend to "legal conclusions, and threadbare recitals of the elements of the cause of actions." *Harris v. Mills*, 572

F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. 662). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

## ANALYSIS

Defendants argue that Plaintiff's ERA claims should be dismissed (1) against NH and PHC for lack of jurisdiction under Rule 12(b)(1); and (2) against all Defendants pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. As to Plaintiff's NYLL claims, Defendants argue that dismissal pursuant to Rule 12(b)(6) is warranted because (1) Plaintiff is not a covered employee; and (2) as to Defendants HSQI and NH, they are not covered employers. Defendants' arguments are analyzed *seriatim*.

### I.    ERA Claim

#### a.    Rule 12(b)(1) - Exhaustion of Remedies

The ERA is "a remedial statute intended to shield employees from adverse action taken by their employers in response to employees' complaints of safety violations," *Conn. Light & Power Co. v. Sec'y of U.S. Dep't of Labor*, 85 F.3d 89, 93 (2d Cir. 1996), and the ERA's anti-retaliation provision protects employees from engaging in protected whistleblower activity, *Patrickson v. U.S. Dep't of Labor*, 303 F. App'x 904, 906 (2d Cir. 2008). DOL-OSHA is tasked with implementing the ERA's anti-retaliation provision. *See* 29 C.F.R. §§ 24.100-24.105. The ERA provides that an employee who believes that he has been subject to a retaliatory employment practice may file a complaint with DOL-OSHA within 180 days of the allegedly retaliatory incident to permit DOL-OSHA an opportunity to investigate. 42 U.S.C § 5851(b)(1). While employees must seek redress first through the DOL-OSHA administrative process, if the DOL "has not issued a final decision within 1 year after the filing of a complaint . . . and there is no showing that such delay is due to the bad faith of the person seeking relief . . . such person may

7

bring an action at law or equity for *de novo* review in the appropriate district court of the United States, which shall have jurisdiction over such an action." 42 U.S.C § 5851(b)(4). Accordingly, under certain circumstances, the ERA permits an employee to opt-out of the DOL-OSHA administrative review process and grants the district court with jurisdiction to hear an ERA wrongful termination claim.

Here, Plaintiff alleges that he filed his complaint asserting claims of retaliation with DOL-OSHA on December 5, 2017 (the "DOL-OSHA Complaint"). (Compl. ¶ 11). Thus, Plaintiff's DOL-OSHA Complaint was filed well within 180 days of the allegedly retaliatory incidents. (*See id.* ¶ 68 (alleging that on October 23, 2017, Plaintiff was issued a "written caution/verbal warning"); *id.* ¶ 102 (alleging that on November 20, 2017 Plaintiff was notified that he was being terminated)). Plaintiff alleges further that he did not receive a final decision from the DOL for more than one year after his DOL-OSHA Complaint was filed and that any delay in issuing a decision was not due to his bad faith. (*Id.* ¶ 14). Thus, Plaintiff avers that he is entitled to seek *de novo* review of his retaliatory termination claim from this Court. (*Id.* ¶ 15).

Defendants concede that the Court has jurisdiction over Plaintiff's claims against HQSI because HSQI was named in Plaintiff's DOL-OSHA Complaint. (Defs Br. at 5 (citing Compl. ¶ 16)). Defendants argue, however, that the Court does not have jurisdiction over Plaintiff's claims against PHC or NH because those Defendants were not named in Plaintiff's DOL-OSHA Complaint and did not have a chance to participate in the DOL-OSHA proceeding for at least a year prior to Plaintiff asserting claims against them in federal court. (*Id*. at 5-6).

Plaintiff's DOL-OSHA Complaint names only HQSI as Plaintiff's employer. (Doc. 35, Decl. of Amanda N. Miller, "Miller Decl.," Ex. A).[5] According to Plaintiff's Complaint, PHC is a wholly owned subsidiary of HQSI. (Compl. ¶ 8). Plaintiff argues that even though only HQSI was named in his DOL-OSHA Complaint, he adequately exhausted his administrative remedies as to PHC because PHC "had notice of, and an opportunity to participate in, the OSHA proceeding from the very beginning." (Pl. Br. at 5). Plaintiff avers, in support of his argument, that the "ERA's notice requirement is easily satisfied" as to PHC because (1) the DOL-OSHA Complaint listed PHC's address as the "worksite" where the "Alleged Retaliation Occurred" (*id.* at 6 (citing Miller Decl., Ex. A)); (2) HQSI submitted a response to Plaintiff's DOL-OSHA Complaint "on behalf of its subsidiary [PHC]" (*id.* (citing Miller Decl., Ex. B at 6)); (3) HQSI's response to the DOL-OSHA Complaint makes it clear that PHC understood it was the subject of Plaintiff's retaliatory

---

[5] Plaintiff's counsel filed a Declaration (the "Miller Declaration") in support of Plaintiff's opposition brief with exhibits annexed thereto. (Doc. 35). On a motion to dismiss, the Court "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference as well as . . . documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted); *see also Aguilar v. Immigration & Customs Enf't Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 818 (S.D.N.Y. 2011) ("In deciding the motion to dismiss, 'the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiffs' possession or the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken.'" (citing *In re Loral Space & Commc'ns Ltd. Sec. Litig.,* No. 01-CV-4388, 2004 WL 376442, at *2 (S.D.N.Y. Feb. 27, 2004))). Furthermore, when a "Rule 12(b)(1) motion place[s] jurisdictional facts in dispute . . . the district court [may] properly consider[] evidence outside the pleadings." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). Here, Plaintiff's Complaint asserts that he exhausted his administrative remedies and makes specific reference to the DOL-OSHA Complaint filed on December 5, 2017 (Compl. ¶ 11; Miller Decl., Ex. A), OSHA's *sua sponte* amendment to the DOL-OSHA Complaint on July 18, 2019 (Compl. ¶ 13; Miller Decl., Ex. D), and Plaintiff's Notice of Intent to Sue dated October 1, 2019 (Compl. ¶ 15; Miller Decl., Ex. E). Thus, these documents are incorporated into Plaintiff's Complaint by reference. The other exhibits annexed to the Miller Declaration—HQSI's December 22, 2017 response to Plaintiff's DOL-OSHA Complaint (Miller Decl., Ex. B), PHC's October 31, 2018 response to Plaintiff's rebuttal (*id.*, Ex. C), and HQSI's August 14, 2019 response to Plaintiff's amended DOL-OSHA Complaint (*id.*, Ex. F)—are all documents Plaintiff possessed or knew about and upon which he relied in bringing the suit. Accordingly, the Court considers the exhibits annexed to the Miller Declaration on the present motion.

termination claim (*id.* (citing Mill Decl., Ex. B ¶¶ 1-22)); and (4) PHC submitted a response to Plaintiff's rebuttal in the DOL-OSHA proceeding (*id.* (citing Miller Decl., Ex. C)).

The Court finds that Plaintiff has satisfied the ERA's exhaustion requirement as to PHC and thus the Court has jurisdiction over Plaintiff's ERA claim asserted against PHC. While both parties rely extensively on *Tamosaitis v. URS Inc.*, 781 F.3d 468 (9th Cir. 2015) in support of their respective arguments, *Tomosaitis* clearly supports Plaintiff's position. The Ninth Circuit, in *Tomosaitis*, found that "before an employee may opt out of the agency process and bring a retaliation suit against a respondent in federal court, that respondent must have had notice of, and an opportunity to participate in, the agency action for one year." *Id.* at 479. The question for this Court then, is not whether PHC was the respondent named in Plaintiff's DOL-OSHA Complaint, but rather whether PHC was "adequately notified . . . that it was the intended respondent" of Plaintiff's DOL-OSHA Complaint. *Id.*; *see also Ma v. Am. Elec. Power, Inc.*, No. 13-CV-89, 2013 WL 12313197, at *3 (W.D. Mich. Aug. 27, 2013) ("To the extent the ERA attaches any importance to naming a specific party as a defendant in a DoL complaint, it is so that the Secretary of Labor can 'notify the person named in the complaint of the filing of the complaint.'" (quoting 42 U.S.C. § 5851(b)(1))).

Here, despite naming HQSI as his employer in his DOL-OSHA Complaint, PHC, HQSI's subsidiary, was clearly on notice of the DOL-OSHA Complaint and had an opportunity to participate in DOL-OSHA's investigation for more than one year prior to Plaintiff commencing this action. On December 22, 2017, nearly two years before Plaintiff commenced this action, HQSI, "on behalf of its affiliate [PHC]," submitted a response to Plaintiff's DOL-OSHA Complaint. (*See* Miller Decl., Ex. B at 6). HQSI's December 22, 2017 Response to the DOL-OSHA Complaint makes clear that PHC understood it was a target of the complaint. (*E.g., id.* ¶¶

2,4 ("During his employment at [PHC] Mr. Trivelli's direct supervisor was . . . April Lividini. . . . On October 23, 2017, Ms. Lividini issued to Mr. Trivelli a verbal caution for poor job performance on a matter unrelated to the fluoroscopies."); *id.* ¶ 5 ("Immediately following his receipt of the job caution, Mr. Trivelli contacted Human Resources at [PHC] to object to the caution and asked about any appeal process."); *id.* ¶ 19 ("On October 24, 2017 Mr. Trivelli made various complaints by email and verbally in an interview with [PHC] HR."); *id.* ¶ 22 ("Upon conclusion of the investigation, [PHC] determined that not only were Mr. Trivelli's claims of safety violations unfounded, but he made them in bad faith."); *id.* ¶ 23 ("[PHC] determined that Mr. Trivelli's allegations and behavior during the investigation constituted a major violation of the Health Quest Rules of Conduct. . . . [PHC] determined to terminate Mr. Trivelli's employment for a major violation 'failing to be truth [sic] during investigations.'"); *id.* ¶ 24 ("[PHC] terminated Mr. Trivelli's employment because he committed a major violation of the Rules of Conduct, not in retaliation for Mr. Trivelli raising safety complaints.")). Because PHC was on notice of, and had an opportunity to participate in, Plaintiff's DOL-OSHA investigation for at least one year prior to Plaintiff commencing this action, the Court finds that Plaintiff exhausted his administrative remedies against PHC and the Court has jurisdiction to hear Plaintiff's ERA claim against PHC.

The same cannot be said for NH. The Court finds that Plaintiff did not exhaust his administrative remedies against NH and thus the Court has no jurisdiction to hear Plaintiff's claims against NH. Plaintiff alleges in his Complaint that NH did not become the parent corporation of PHC until or around April 3, 2019, approximately one and a half years after Plaintiff filed his DOL-OSHA Complaint and approximately six months before Plaintiff commenced this action. (*See* Compl. ¶ 10). Plaintiff's Complaint does not assert any facts that indicate that NH had notice of and an opportunity to participate in the DOL investigation for at least one year, and the

documents related to the DOL-OSHA investigation annexed to the Miller Declaration do not establish that NH was in any way involved in the investigation.

Plaintiff dedicates a mere two sentences in a footnote in his brief to the issue of whether this Court has jurisdiction to hear his ERA claim against NH stating, "As the Complaint alleges, Defendant Nuvance came into existence on or about April 3, 2019 as a result of a merger between Defendant HQSI and Western Connecticut Health Network. . . . Plaintiff's allegation is more than Defendant Nuvance is a parent of Defendant HQSI but that Defendant Nuvance has stepped into Defendant HQSI's shoes." (Pl. Br. at 10 n.4). Plaintiff cites to no authority in support of the argument that a parent corporation can be sued under the ERA even if that entity was not named in, was not on notice, and did have an opportunity to participate in, the DOL-OSHA investigation. Thus, the Court finds that Plaintiff did not exhaust his administrative remedies against NH. *See Ma*, 2013 WL 12313197, at *1 ("For purposes of the statute, the term 'employer' includes 'a licensee of the [Nuclear Regulatory] Commission,' but not the licensee's parent company (citing 42 U.S.C. § 5851(a)(2))); *cf. New York State Elec. & Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 224 (2d Cir. 2014) ("It is fundamental that a parent is considered a legally separate entity from its subsidiary"). Accordingly, the Court finds it does not have jurisdiction to hear Plaintiff's ERA claim asserted against NH and dismisses this claim.

### b.  Failure to State a Claim - Rule 12(b)(6)

Defendants next argue that Plaintiff has failed to state a claim upon which relief can be granted under the ERA. While the Second Circuit has not had occasion to articulate the elements of a *prima facie* claim for retaliation under the ERA, several other circuits have found that to prevail on an ERA retaliation claim Plaintiff must allege that "(1) the employer is covered by the act, (2) the employee engaged in protected activity, (3) the employee suffered adverse action, and

(4) there is an inference of causation between the protected activity and the adverse action. Proximity in time is sufficient to raise an inference of causation." *Muino v. U.S. Dep't of Labor*, 325 F. App'x 791, 793 (11th Cir. 2009) (quoting *Bechtel Const. Co. v. Secretary of Labor,* 50 F.3d 926, 934 (11th Cir. 1995)); *see also, e.g., Sanders v. Energy Nw.*, 812 F.3d 1193, 1197 (9th Cir. 2016) ("To establish a *prima facie* case of retaliation under the Act, an employee must show that '(1) he engaged in a protected activity; (2) the respondent knew or suspected . . . that the employee engaged in the protected activity; (3) [t]he employee suffered an adverse action; and (4) [t]he circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the adverse action.'" (citing *Tamosaitis*, 781 F.3d at 481)); *Vander Boegh v. EnergySolutions, Inc.*, 536 F. App'x 522, 528 (6th Cir. 2013) ("In general, a *prima facie* case of retaliation requires the plaintiff to show that (1) he engaged in protected activity; (2) the employer had knowledge of the protected activity; (3) he suffered an adverse employment action; and (4) a causal connection existed between the protected activity and the adverse employment action." (citing *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 468-69 (6th Cir. 2012)).

Here, Defendants argue (1) that HQSI is not a covered employer under the act[6] and (2) that Plaintiff has not engaged in protected whistleblower activity. These arguments will be analyzed in turn.

First, the ERA defines a covered employer as:

(A) a licensee of the Commission or of an agreement State under section 274 of the Atomic Energy Act of 1954 (42 U.S.C. 2021);
(B) an applicant for a license from the Commission or such an agreement State;
(C) a contractor or subcontractor of such a licensee or applicant;
(D) a contractor or subcontractor of the Department of Energy that is indemnified by the Department under section 170 d. of the Atomic Energy Act of 1954 (42

---

[6] Defendants argue also that NH is not a covered employer under the act. Because the Court has already found that it does not have jurisdiction to hear Plaintiff's ERA claim asserted against NH, the Court need not determine whether it is a covered employer.

U.S.C. 2210(d)), but such term shall not include any contractor or subcontractor covered by Executive Order No. 12344;
(E) a contractor or subcontractor of the Commission;
(F) the Commission; and
(G) the Department of Energy.

42 U.S.C. § 5851(a)(2).

Plaintiff's Complaint alleges that PHC is a covered employer pursuant to 42 U.S.C. § 5851(a)(2)(A) because "PHC possesses New York State Department of Health Radioactive Materials License Number 1074." (Compl. ¶ 113). Defendants do not dispute that PHC is a covered employer.

As to HQSI, Plaintiff's Complaint alleges only that HQSI is the parent company of PHC, not that HQSI is a separately covered employer under the ERA. (*See* Compl. ¶ 8). Plaintiff's allegations are insufficient to establish that HQSI is a covered employer. *Ma*, 2013 WL 12313197, at *1 ("For purposes of the statute, the term 'employer' includes 'a licensee of the [Nuclear Regulatory] Commission,' but not the licensee's parent company." (citing 42 U.S.C. § 5851(a)(2))). Plaintiff's arguments that (1) HQSI should be subject to joint liability for the actions of PHC, (2) HQSI provides health care services through PHC, and (3) Plaintiff's termination letter provided that he violated HQSI's Policy Rules of Conduct simply do not establish that HQSI is a covered employer under the ERA. The ERA enumerates seven categories of covered employers, and Plaintiff does not allege that HQSI fits into any of these categories. Accordingly, the Court finds that Plaintiff has failed to allege that HQSI is a covered employer and dismisses Plaintiff's ERA claim against HQSI.

Next, Defendants argue that Plaintiff failed to allege that he engaged in protected whistleblower activity as defined by the ERA. (Defs. Br. at 8). The ERA enumerates five specific categories of protected activities and also includes a catch-all provision which provides that an

employer may not "discharge any employee or otherwise discriminate against any employee . . . because the employee assisted or participated in any other action to carry out the purposes of this chapter or the Atomic Energy Act of 1954." 42 U.S.C. §§ 5851(a)(1)(A)-(F). While "any other action" is not defined in the act, the Court finds that internal safety complaints—such as the internal safety complaints alleged to have been made by Plaintiff in this case—fall within the ambit of "any other action" and is protected activity under the ERA. *See Consol. Edison Co. of New York v. Donovan*, 673 F.2d 61, 63 (2d Cir. 1982) (finding that the complainant produced evidence establishing a *prima facie* case for improper discharge under the ERA including, *inter alia*, internal safety complaints); *see also Bechtel Const. Co. v. Sec'y of Labor*, 50 F.3d 926, 931-32 (11th Cir. 1995) (holding that "'any other action' . . . include[s] internal complaints made to supervisors and others" so long as the complaints "raised particular, repeated concerns about safety procedures").

Here, Plaintiff made repeated and specific internal complaints to multiple people about his concerns regarding possible exposure to radiation in the course of performing fluoroscopies for which Plaintiff alleges he was not properly trained. (Compl. ¶ 60 ("On October 20, 2017, Plaintiff requested a meeting with Anthony Iraola, a Human Resources Business Partner at Defendant PHC, to discuss Plaintiff's concerns regarding the fluoroscopies."); *id.* ¶ 62 ("On October 23, 2017 . . . Plaintiff emailed his supervisor, Ms. Lividini, expressing his safety concerns about performing the fluoroscopies."); *id.* ¶ 71 ("On October 23, 2017, Plaintiff emailed Kathryn Duras, Human Resources Director at Defendant PHC, requesting a meeting regarding the [fluoroscopies]."); *id.* ¶ 73 ("On October 24, 2017, . . . Plaintiff emailed Mr. Iraola and reported to him that on October 4-5, 2017 Plaintiff performed, at Ms. Lividini's behest, fluoroscopies on over 100 lead aprons, thyroid shields, and vests which took two days and hours of fluoroscopy time despite the fact that Plaintiff did not have a New York State license to perform this task or proper radiation safety

training."); *id.* ¶¶ 76-78 (alleging that on October 24, 2017, Plaintiff met with Iraola and Duras to discuss his concerns with the fluoroscopy procedures)). Thus, the Court finds that Plaintiff's repeated and particular internal safety complaints fall within the ERA's protected activity catch-all provision. Accordingly, the Court finds that Plaintiff has stated a claim for relief under the ERA against PHC.

## II. NYLL § 741 claim

NYLL § 741 is "a statue intended to protect health care workers who complain about unsafe medical practices." *Mayer v. Neurological Surgery, P.C.*, No. 15-CV-0864, 2016 WL 347329, at *3 (E.D.N.Y. Jan. 28, 2016). Section 741 prohibits "retaliatory action against any employee" who:

> (a) discloses or threatens to disclose to a supervisor, to a public body, to a news media outlet, or to a social media forum available to the public at large, an activity, policy or practice of the employer or agent that the employee, in good faith, reasonably believes constitutes improper quality of patient care or improper quality of workplace safety; discloses or threatens to disclose to a supervisor, or to a public body an activity, policy or practice of the employer or agent that the employee, in good faith, reasonably believes constitutes improper quality of patient care or improper quality of workplace safety; or

> (b) objects to, or refuses to participate in any activity, policy or practice of the employer or agent that the employee, in good faith, reasonably believes constitutes improper quality of patient care or improper quality of workplace safety.

N.Y. Lab. Law § 741(2). Defendants advance two arguments for why Plaintiff's § 741 claim should be dismissed: (1) Plaintiff does not meet the statute's definition of a covered employee and (2) as to HQSI and NH, those Defendants are not covered employers.

Section 741 defines "employee" as "any person who performs health care services for and under the control and direction of any public or private employer which provides health care services for wages or other remuneration." N.Y. Lab. Law § 741(1)(a). Defendants argue that Plaintiff is not a covered employee because Plaintiff's Complaint "does not contain any facts

demonstrating that Plaintiff's job duties as a Radiology Supervisor required him to make professional judgments regarding patient care." (Defs. Br. at 10).

The Court finds that Plaintiff's allegations are sufficient to establish that he meets § 741's definition of a covered employee. Plaintiff was a Nuclear Medical Technologist from approximately July 7, 2007 until November 9, 2014 at which time he was promoted to a Radiology Supervisor. (Compl. ¶¶ 37, 40). At the time of the events giving rise to this dispute, Plaintiff was employed as a Radiology Supervisor at PHC. (*Id.* ¶ 40). Plaintiff alleges that his job responsibilities as a Radiology Supervisor included "supervising outpatient radiology," "dealing with patient complaints," and "perform[ing] his previous duties as a Nuclear Medical Technologist *i.e.*, administering nuclear isotopes into patients." (*Id.* ¶¶ 42-43; *see also id.* ¶ 38 (explaining that the process of administering nuclear isotopes includes "us[ing] a camera, that did not emit any ionizing radiation, to view the area(s) of the body that the isotopes had traveled through.")). Plaintiff alleges that these job duties encompassed "perform[ing] health care services for and under the direction and control of Defendants." (*Id.* ¶ 125). Plaintiff's allegations, specifically that he administered nuclear isotopes into patients, establish that he performed health care services and meets § 741's definition of an employee.

The cases Defendants cite to in support of an alternate conclusion—*i.e.* that Plaintiff was not performing health care services—are easily distinguishable from the case at bar. In *Reddington v. Staten Island Univ. Hosp.*, the plaintiff was employed at Staten Island University Hospital first as a "coordinator of volunteer services" then as "manager of volunteer services" and eventually as "Director-International Patient Program." 893 N.E.2d 120, at *3-4 (N.Y. 2008). Plaintiff's duties included, *inter alia*, "[c]oordinat[ing] arrival, transportation and lodging for international patients," "[m]anag[ing] and train[ing] personnel providing translation services," "[d]evelop[ing

a] calendar of activities for international patients," and "[d]istribut[ing], collect[ing] and analyz[ing] patient satisfaction questionnaires to continually enhance services." *Id.*, at *4. The plaintiff in *Moynihan v. New York City Health & Hosps. Corp.* was employed by the New York City Health and Hospitals Corporation's ("HHC") Office of Clinical and Health Services Research. 993 N.Y.S.2d 260, at *1 (N.Y. App. Div. 2014). Based on the plaintiff's allegations, her job responsibilities included "review[ing] the documentation of human-subject research projects conducted at HHC facilities for regulatory compliance." *Id.* at *2. The plaintiff in *Moynihan* did not allege that she "provided treatment nor care to patients, nor did she supervise or direct those who did; nor did she have responsibility for the provision of resources needed for treatment or care[, and she did] not allege that she had interaction with patients or any decision-making authority concerning the care administered to any particular patient." *Id.* Finally, the plaintiff in *Phillips v. Ralph Lauren Ctr. for Cancer Care & Prevention* was an endoscopy technician whose primary tasks were to "maintain the endoscopy equipment, inventory supplies, assist the licensed practical nurse in the admitting, recovery and discharge process, to monitor vital signs during procedures, and to use a scope to remove polyps as requested by the physician who works the scope on a patient." 880 N.Y.S.2d 875, at *1 (N.Y. Sup. Ct. 2009). The court found the plaintiff did not satisfy the definition of an employee because his duties were "almost exclusively, administrative" and included only non-discretionary duties. *Id.* at *3. Significantly, the court looked to the plaintiff's qualifications, including the fact that the plaintiff had only a high school education and one year of experience in the medical field when determining whether his job duties constituted the performance of health care services. *Id.* at *1.

The job responsibilities of the plaintiffs in both *Reddington* and *Moynihan* are readily distinguishable from the job duties of Plaintiff in the case at bar. Those plaintiffs, while employed

at facilities that may have provided health care services directly to patients, had job duties and responsibilities that were largely, if not completely, unrelated to providing health care services to patients. Here, Plaintiff alleges expressly that his job responsibilities included providing health care services to patients in the form of administering nuclear isotopes into patients. (Compl. ¶¶ 38, 42-43, 125). Additionally, unlike the plaintiff in *Phillips* who had only a high school education and limited experience in the medical field, Plaintiff here has an associate's degree in Nuclear Medicine Technology, is certified by the American Registry of Radiologic Technologists in Nuclear Medicine Technology and the Nuclear Medicine Technology Certification Board, holds a New York State license in Nuclear Medicine Technology, and worked at hospitals providing care to patients for at least ten years. (Compl. ¶¶ 34-40). While not determinative, Plaintiff's qualifications and work history provide additional support that he was engaged in providing health care services to patients. Defendants' argument that Plaintiff merely performed administrative services is unavailing and the cases Defendants rely upon in support of their position are inapposite. Accordingly, the Court finds that Plaintiff is a covered employee.

Next, Defendants argue that HQSI and NH are not covered employers under § 741. Section 741 defines employers as:

> [A]ny partnership, association, corporation, the state, or any political subdivision of the state which: (i) provides health care services in a facility licensed pursuant to article twenty-eight or thirty-six of the public health law; (ii) provides health care services within a primary or secondary public or private school or public or private university setting; (iii) operates and provides health care services under the mental hygiene law or the correction law; or (iv) is registered with the department of education pursuant to section sixty-eight hundred eight of the education law.

N.Y. Lab. Law § 741(1)(b). Defendants do not challenge PHC's status as a covered employer. (Defs. Br. at 11). The Court finds that there are no allegations in Plaintiff's Complaint establishing that either HQSI or NH are covered employers under § 741. While Plaintiff argues that (1) HQSI

and NH are subject to joint liability, (2) Plaintiff disclosed his concerns to HQSI personnel, and (3) Defendants' proffered reason for Plaintiff's discharge was his violation of HQSI's rules of conduct, none of these arguments demonstrate that HQSI or NH are covered employers. Plaintiff has offered no case law or statutory support, and the Court is aware of none, that establishes that in the absence of an independent basis for employer status under § 741, Defendants may still be classified as covered employers. Accordingly, the Court finds that HQSI and NH are not covered employers and dismisses Plaintiff's § 741 claims against HQSI and NH.

**III.    Plaintiff's Request to File an Amended Complaint**

Plaintiff asks that, if the Court finds any of his allegations to be deficient, the Court grant him permission to file an Amended Complaint. (Pl. Br. at 18-19). Under Federal Rule of Civil Procedure 15, "[t]he Court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "However, it is well established that leave to amend a complaint need not be granted when amendment would be futile." *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

Here, Plaintiff's request to amend his Complaint contained in his brief is denied without prejudice to making a proper motion in compliance with the Court's Individual Practices as to HQSI only. As to NH, Plaintiff alleges that NH did not come into existence until April 2019 (*see* Compl. ¶ 10), approximately one and a half years after the events giving rise to this dispute. Therefore, under no set of facts could Plaintiff establish that he exhausted his administrative remedies against NH under the ERA, and, in any event, Plaintiff could not establish that NH was his employer at the time of the alleged conduct at issue in Plaintiff's Complaint. Thus, as to NH, any amendment would be futile. Accordingly, if Plaintiff is so advised and in accordance with this Court's Individual Practices, he may file a pre-motion conference letter seeking permission to

amend his Complaint against HQSI only and attach thereto a redlined version of his proposed Amended Complaint.

## <u>CONCLUSION</u>

Defendants' motion to dismiss is GRANTED IN PART. The Court dismisses Plaintiff's first and second claims for relief against Defendants HQSI and NH. Plaintiff's first and second claims for relief against Defendant PHC will proceed to discovery. Plaintiff may, if he is so advised and in accordance with this Memorandum Opinion and Order, file a pre-motion conference letter seeking permission to file an Amended Complaint by January 11, 2021. If Plaintiff does not file a pre-motion conference letter seeking permission to file an Amended Complaint by January 11, 2021, Defendant PHC shall answer Plaintiff's Complaint by January 25, 2021.

The Clerk is instructed to remove Defendant Nuvance Health from the docket and to terminate the pending motion (Doc. 29).

**SO ORDERED:**

Dated: New York, New York
       December 9, 2020

_____
Philip M. Halpern
United States District Judge